UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JERRY DOWELL BAILEY,

        Plaintiff,

v.

UNKNOWN SKYTTA et al.,

        Defendants.

_____/

Case No. 2:17-cv-187

Honorable Paul L. Maloney

# **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Washington. The Court will serve the complaint against Defendants Skytta, Lesatz, Marshall, and Petaja.

**Discussion**

I. **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corrections Officer Unknown Skytta, Warden Unknown Lesatz, Deputy Warden Unknown Marshall, Inspector Unknown Petaja, and MDOC Director Heidi Washington.

Plaintiff alleges that he requested removal from the voluntary segregation incentive program on July 19, 2017, because it violates his rights. Prison Counselor Deforge refused to grant Plaintiff's request. On July 21, 2017, Defendant Skytta removed Plaintiff's television from his cell while he was in the yard. Plaintiff was given a contraband removal slip stating that he could not possess the television because he was not on step 4 of the incentive program. Plaintiff states that all segregation prisoners are required to volunteer for the incentive program in order to maintain possession of their personal property or be released from segregation. Plaintiff asserts that he had not had a misconduct since April 18, 2017, and that the reason he was dropped from stage 4 to stage 2 of the program was because he had been talking on third shift. Plaintiff states that he never received any warning or reprimand, but was just informed that he was no longer on step 4 of the incentive program.

Plaintiff alleges that later in the day on July 21, 2017, another inmate flooded the hallway with toilet water, feces, and urine. Defendant Skytta came to clean the floor while Plaintiff was conversing with another prisoner. Defendant Skytta told Plaintiff to "shut the f**k up" and called Plaintiff a child molester, stating that he was going to get Plaintiff's file and read it "on the rock." Defendant Skytta then took the squeegee that he had been using to clean the floor and used

it to splash contaminated water onto Plaintiff's leg. Defendant Skytta then turned the water off in Plaintiff's cell and stated that Plaintiff "didn't have nothing coming in the block he's in." Defendant Skytta worked a double shift and deprived Plaintiff of both his breakfast and lunch. Defendant Skytta also told all the other officers not to turn Plaintiff's water back on and stated that he was going to kill Plaintiff.

Plaintiff asked several staff members for food and water, but they simply told Plaintiff to talk to Defendant Skytta. On August 24, 2017, at approximately 3:15 pm, Plaintiff begged Defendant Petaja to turn his water back on, to no avail. At approximately 3:30 pm, Plaintiff explained his situation to Defendant Marshall and begged him to turn his water back on. Defendant Marshall told Plaintiff to try his water, so Plaintiff attempted to turn his water on. When nothing happened, Defendant Marshall told Plaintiff to talk to Defendant Skytta. When Defendant Lesatz made rounds later that day, Plaintiff asked him to turn the water on in his cell. Defendant Lesatz told Plaintiff to try his water, so Plaintiff attempted to turn his water on. When nothing happened, Defendant Lesatz told Plaintiff to talk to his "rock" officer. Finally, Defendant Skytta came to Plaintiff's cell and stated that Plaintiff was a rat, which was not going to help him.

Plaintiff began to suffer from severe dehydration, diarrhea and kidney pain, so he submitted a medical kite. On July 25, 2017, Nurse Sundberg asked custody staff to turn Plaintiff's water on. However, even after the water was turned on, it did not function in Plaintiff's cell because Defendant Skytta had stripped the nozzle that controlled the flow of water into Plaintiff's cell. Therefore, maintenance had to be called in to fix the problem. Plaintiff filed another kite on July 26, 2017, and was seen by Nurse Corigan, who took a urine sample and referred Plaintiff to the general practitioner. Plaintiff was seen by the general practitioner on July 28, 2017, who confirmed that Plaintiff was dehydrated, but stated that the kidney pain was properly muscular.

Plaintiff continues to have pain in his kidney area. Plaintiff claims that he suffered without water and with very little food from July 21, 2017, until July 25, 2017. Plaintiff requested an HIV and Hepatitis test as a result of being exposed to feces and urine by Defendant Skytta.

Plaintiff claims that Defendants violated his rights under the Eighth and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that his due process rights were violated by his forced participation in the Incentives in Segregation Program. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due

process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Plaintiff states that Defendants Washington and Lesatz are in charge of the program, which has no specific guidelines or rules. Plaintiff alleges that his television was taken by Defendant Skytta without any due process after Plaintiff requested to be removed from the program. The Incentives in Segregation Program (IISP) at AMF was previously addressed by this Court in *Patterson v. Heyns*, 2014 WL 5392057 (W.D. Mich. Oct. 23, 2014). In *Patterson*, the Court cited the IISP Program Manual:

> The goal of the Incentives in Segregation Program (IISP) is to motivate prisoners to demonstrate appropriate behavior by offering incentives that encourage positive adjustment. The IISP uses a six (6) stage progression of expectations and incentives to encourage appropriate behavior. Successful progression through the six stages will assist staff in recommending prisoners for release [from segregation] while maintaining a safe and secure environment. The Security Classification Committee and the Administration retain full responsibility and discretion for approving Segregation releases.
>
> Prisoners classified to Administrative Segregation will be afforded the opportunity to progress through the six stages of the program. Prisoners will be required to adhere to the requirements of each stage and may be provided with the incentives detailed in this Program Manual. All prisoners, unless determined differently by the Housing Unit Team and/or the Security Classification Committee, will start the program at Stage 2 and with positive behavior will advance through the stages to Stage 6.
>
> Prisoner's positive and negative behavior will be evaluated by each shift on a daily basis and recorded on the Record of Segregation Incentive Program Form. Documentation of negative behavior does not need to be in the form of a Major Misconduct. The Housing Unit Team will review these Records on a weekly basis. Prisoners who do not complete all requirements or abuse the incentives provided at each stage will be evaluated and may be placed at a lower stage based on the Housing Unit Team's recommendation. Prisoners who

6

> are considered to be high risk segregation placement may progress to Stage 6, but will not be considered for General Population unless approved by the Warden or higher authority where applicable.
>
> Prisoners will be required to complete Essays at Stages 2 through 6 and a Journaling Program at Stages 5 and 6. The Essays are important to the IISP and prisoners may be required to re-write their Essays if not appropriate.

*Patterson*, 2104 WL 5392057 at **1-2.

Like the Plaintiff in the instant case, the plaintiff in *Patterson* claimed that his television had been confiscated and not returned even though he was not under any sanctions, and that he should not be required to participate in the IISP or to comply with IISP standards in order to have his television. *Id.* at *2. However, the Court dismissed plaintiff Patterson's due process claim, concluding that the IISP requirements for segregation prisoners do not rise to the level of an atypical and significant hardship. *Id.* at *4. For the reasons stated by the Court in *Patterson*, this Court will dismiss Plaintiff's due process claims against Defendants Washington and Lesatz.

Plaintiff claims that Defendant Skytta deprived him of food and water in violation of the Eighth Amendment, and that Defendants Lesatz, Marshall, and Petaja furthered this deprivation by refusing to help Plaintiff when he begged them to turn his water back on. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations

of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). The Court concludes that Plaintiff's Eighth Amendment claims against Defendants Skytta, Lesatz, Marshall, and Petaja are not clearly frivolous and may not be dismissed on initial review.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Washington will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Skytta, Lesatz, Marshall, and Petaja.

An Order consistent with this Opinion will be entered.


Dated: April 13, 2018 /s/Paul L. Maloney
Paul L. Maloney
United States District Judge