UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JERRY DOWELL BAILEY #194330, JR,   Case No. 2:17-cv-00187

    Plaintiff,   Hon. Paul L. Maloney
        U.S. District Judge
v.

UNKNOWN SKYTTA, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner Jerry Dowell Bailey, Jr. pursuant to 42 U.S.C. § 1983. Bailey is confined in the Baraga Correctional Facility and alleges that his Eighth Amendment rights were violated by Defendants Corrections Officer Skytta, Warden Lesatz, Deputy Warden Marshall, and Inspector Petaja. Bailey says that he was denied meals and water between July 21, 2017, and July 25, 2017, and that Defendant Skytta splashed him with contaminated water that had spilled into his prison cell.

Defendants filed a motion for summary judgment. (ECF No. 30.) I respectfully recommend that the Court grant the motion and dismiss this case.

### II. Factual Allegations

Bailey asserts that on July 21, 2017, another inmate flooded the hallway with toilet water, feces, and urine. Defendant Skytta came to clean the floor while Bailey was conversing with another prisoner. Bailey says that Defendant Skytta told him to "shut the f**k up" and called Bailey a child molester, stating that he was going to

get Bailey's file and read it "on the rock."   Bailey says that Defendant Skytta then took the squeegee that he had been using to clean the floor and used it to splash contaminated water onto Bailey's leg.  Bailey says that Defendant Skytta then turned the water off in the cell and stated that Bailey "didn't have nothing coming in the block he's in." Defendant Skytta worked a double shift and allegedly deprived Bailey of both his breakfast and lunch.  Bailey alleges that Defendant Skytta also told all the other officers not to turn the water back on and stated that he was going to kill Bailey.

Bailey says that he asked several staff members for food and water, but they simply told him to talk to Defendant Skytta.  On July 24, 2017, at approximately 3:15 pm, Bailey says that he begged Defendant Petaja to turn his water back on, to no avail.  At approximately 3:30 pm, Bailey explained his situation to Defendant Marshall and begged him to turn his water back on.  Defendant Marshall told Bailey to try his water, so Bailey atempted to turn his water on.  When nothing happened, Defendant Marshall told him to talk to Defendant Skytta.  When Defendant Lesatz made rounds later that day, Bailey asked him to turn the water on in his cell. Defendant Lesatz told him to try his water, so Bailey attempted to turn his water on. When nothing happened, Defendant Lesatz told Bailey to talk to his "rock" officer. Finally, Defendant Skytta came to Bailey's cell and stated that Plaintiff was a rat.

Bailey says that he began to suffer from severe dehydration, diarrhea and kidney pain, so he submitted a medical kite.  On July 25, 2017, Nurse Sundberg asked custody staff to turn Bailey's water on. However, even after the water was

2

turned on, it did not function in the cell because Defendant Skytta had stripped the nozzle that controlled the water flow. Therefore, maintenance had to be called in to fix the problem. Bailey says that he filed another kite on July 26, 2017, and was seen by Nurse Corigan, who took a urine sample and referred Bailey to the general practitioner. Bailey says that at this examination it was confirmed that he was dehydrated. Bailey says that he continues to have pain in his kidney area. Bailey claims that he suffered without water and with very little food from July 21, 2017, until July 25, 2017.

### III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV. Qualified Immunity - Eighth Amendment

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination, the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232-233. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.*

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v.*

*Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

"[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate ... food."  *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832).  The Constitution "does not mandate comfortable prisons," however.  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  Temporary inconveniences, such as being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, fail to demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

Similarly, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation.  *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same); *see also Berry v. Brady*, 192 F.3d 504, 507-08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, No. 01-17355,

2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

In *Richmond*, the Sixth Circuit determined that a prisoner who was deprived of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not state a viable Eighth Amendment claim, because he "does not allege that his health suffered as a result of not receiving the meals." *Richmond*, 450 F. App'x at 456. In *Cunningham*, the Sixth Circuit determined that providing a prisoner only one meal a day for over two weeks was not an Eighth Amendment violation, because the meals provided were adequate to sustain normal health. *Cunningham*, 667 F.2d at 566.

### A. Defendants Lesatz, Marshall, and Petaja

Bailey says that on July 25, 2017, he told Defendants Warden Lesatz, Deputy Marshall, and Inspector Petaja that the water in his cell was turned off while each of them was doing rounds. Bailey says that each Defendant told him to speak with Defendant Skytta. Bailey says that within ten minutes after speaking with Lesatz, Marshall, and Petaja, Defendant Skytta came to his cell and called him a rat. (ECF No. 34, PageID.529.) On July 26, 2017, the next day, a maintenance staff employee fixed the water issue in Bailey's cell. (*Id.*, PageID.531.)

Bailey admits that he spoke with Defendants Lesatz, Marshall, and Petaja for the first time on July 25, 2017, that they told him to talk with Defendant Skytta, and that his water issues were repaired the next day. (*Id.*, PageID.529-531.)

Accepting each of Bailey's allegations against Defendants Lesatz, Marshall, and Petaja as true, Bailey cannot show that they violated his Eighth Amendment rights. Bailey admits that Defendants Lesatz, Marshall, and Petaja told him to contact Defendant Skytta and that his water issues were fixed the next day. In the opinion of the undersigned, Bailey's allegations against Defendants Lesatz, Marshall, and Petaja fail to show that they acted with deliberate indifference. For these reasons, it is respectfully recommended that the Court find that Defendants Lesatz, Marshall, and Petaja are entitled to qualified immunity.

### B. Defendant Skytta

Bailey claims that Skytta (1) splashed foul water on him, (2) denied him meals between July 21, 2017, and July 25, 2017, and (3) shut off the water in his cell and caused him to suffer from dehydration. Bailey's admissions and the meal records undercut these broad allegations. Upon review of the filings in this case, the undersigned finds that Skytta is entitled to qualified immunity.

### 1. Foul Water

Bailey says that when Defendant Skytta was cleaning the water in Bailey's cell, some water splashed onto Bailey's lower leg. In the opinion of the undersigned, Bailey has failed to show that his Eighth Amendment rights were violated. Assuming that the water was contaminated, Bailey has failed to show that he

suffered any adverse harm. Bailey has failed to put into the record verifiable medical evidence that could show that he suffered a serious medical issue due to the alleged contact with contaminated water. Bailey's allegation that he was splashed with contaminated water is not enough to make out an Eighth Amendment claim.

## 2. Denial of Meals

Second, Bailey asserts that Defendant Skytta denied him meals between July 21, 2017, and July 25, 2017. Bailey stated that Defendant Skytta "took my food," refusing to give him breakfast and lunch on July 22, 2017. (*Id.*, PageID.523-524.) Bailey states that he did not receive any meals on July 23, 2017. (*Id.*, PageID.525-526.) Bailey says that on July 24, 2017, he did not receive breakfast or lunch, but did eat dinner. (*Id.*, PageID.529.) The Meal Logs show that Bailey refused eight meals over a five-day period.[1] (ECF No. 31, PageID.500-501.) Bailey admitted that he did not see Defendant Skytta on July 23, 2017, because he was not working in Bailey's prison wing. (ECF No. 34, PageID.527.) Bailey stated that he did not speak with Defendant Skytta until July 25, 2017, after he had spoken with Defendants Lesatz, Marshall, and Petaja. (*Id.*, PageID.46.)

Bailey has not established that Defendant Skytta denied him food between July 21, 2017, and July 25, 2017. Bailey missed a total of eight meals during this time period. On July 23, 2017, when Bailey missed two meals, he admits that

---

[1] The meal log shows that Bailey ate all his meals on July 21, 2017, refused breakfast and lunch on July 22, 2017, but ate dinner, ate all his meals on July 23, 2017, refused all meals on July 24 and 25, 2017, and ate all his meals on July 26 and July 27, 2017.

Defendant Skytta was not working in his prison wing. In addition, Bailey admits that he did not speak with Defendant Skytta until July 25, 2017. Bailey has failed to establish that Defendant Skytta denied him meals. Moreover, assuming that Defendant Skytta denied Bailey meals, it is respectfully recommended that the Court find that Defendant Skytta is entitled to qualified immunity because Bailey has failed to show that the denial of eight meals over a five-day period caused him any medical harm in violation of the Eighth Amendment.

### 3. Water Shut Off in Cell

Finally, Bailey alleges that Defendant Skytta shut off the water in his cell and caused him to suffer from dehydration. Bailey admitted that he received milk or Kool-Aid with his meals. (*Id.*, PageID.524.) Bailey says that Defendant Skytta broke the water nozzle in his cell. Bailey admits that a maintenance staff employee repaired his water issue on July 26, 2017, after a nurse called maintenance staff to repair the water issue. (*Id.*, PageID.530-531.)

Bailey admits that Defendant Skytta did not work on his wing on July 23, 2017, and that he did not speak with Defendant Skytta until July 25, 2017. Bailey's water issue was repaired the next day. In addition, although Bailey asserts that he was medically diagnosed with dehydration, his medical record does not support that claim. Bailey presented a medical record dated July 31, 2017. (ECF No. 37-1, PageID.653-654.) Bailey was examined after complaining of left lower back pain. (*Id.*) He was instructed to drink more liquids, but the record does not indicate that he suffered with dehydration. More importantly, Bailey's exhibits fail to support his

claim of dehydration or that the temporary lack of running water in his cell caused him any medical issues. In the opinion of the undersigned, Bailey has failed to show that Defendant Skytta denied him water or caused him to suffer with a serious medical need. It is respectfully recommended that the Court conclude that Defendant Skytta is entitled to qualified immunity.

## V.  Motion To Supplement

Bailey filed a motion to supplement his response to Defendants' motion for summary judgment. Bailey's supplemental response contains citation references to several cases. (ECF No. 50-1, PageID.688-689.) Bailey asserts that Defendant Skytta has a history of grievances filed against him. (PageID.691.) It is recommended that the Court accept Bailey's supplemental response.

## VI.  Recommendation

I respectfully recommend that the Court (1) grant Bailey's motion to supplement his response brief (ECF No. 50) and (2) grant Defendants' motion for summary judgment (ECF No. 30.)

Acceptance of this recommendation will result in the dismissal of this case.

Dated:    December 31, 2019          /s/ *Maarten Vermaat*
                                     MAARTEN VERMAAT
                                     U.S. MAGISTRATE JUDGE

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).